UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| C.Q.,<br><br>                              Plaintiff,<br><br>v.<br><br>DAVID ROCKEFELLER, JR., RICHARD E. SALOMON and JAMES S. SLIGAR, As The Executors of the ESTATE OF DAVID ROCKEFELLER, Deceased, and MARGARET DULANY  ROCKEFELLER,<br><br>                              Defendants. |

**FIRST AMENDED COMPLAINT**

20-CV-2205 (VSB)

C.Q., by and through her undersigned attorneys, as and for her First Amended Complaint, alleges as follows:

**NATURE OF THE ACTION**

1.      This action is brought pursuant to the Child Victims Act, codified at CPLR 214-g.

2.      An employer who provides housing for a mother and child that the employer owns, operates, controls and manages, has a duty to provide a safe place for that employee and her child to live. Here, Defendant DAVID ROCKEFELLER, deceased (hereinafter "ROCKEFELLER") ignored this duty and allowed his chauffeur to sexually abuse the child of his live-in chef, then seven-year-old infant Plaintiff, on multiple occasions on ROCKEFELLER'S premises.   Years later, Plaintiff is still haunted by the memories of her abuse and the betrayal she endured due to the acts and omissions of ROCKEFELLER who was supposed to shield Plaintiff from foreseeable harm in the one place all children should feel safe – their home.

3.     ROCKEFELLER hired Plaintiff's mother as a live-in chef at his home in the 1980's.  At that time ROCKEFLLER knew that Plaintiff's mother was a single mother of two very young children; Plaintiff and her brother.  When he hired her ROCKEFELLER knew that Plaintiff's mother would be spending long hours in the kitchen as a condition of her work, and that she would therefore require child care for her two children who would otherwise be unsupervised and alone.  Rather than provide Plaintiff and her mother with adequate, qualified and proper child care assistance, ROCKEFELLER enlisted his chauffeur Luis De Oliveira  A/K/ Luis Oliveira (" hereinafter Oliveira") to provide babysitting services for infant Plaintiff in the spring of 1988. ROCKEFELLER enlisted Oliveira as a babysitter at that time solely for ROCKEFELLER'S benefit so that infant Plaintiff's mother could work long hours in the kitchen preparing food for ROCKEFELLER and his guests.

4.     While babysitting infant Plaintiff, Oliveira, at the direction and with the permission of ROCKEFLLER, used an automobile owned and provided to him by ROCKEFELLER to take infant Plaintiff from her home and to an apartment in Manhattan owned operated and maintained by ROCKEFELLER for use by Oliveira, where Oliveira brutally sexually assaulted Plaintiff.   Over a substantial period of time thereafter, Oliveira sought out infant Plaintiff on premises owned, operated, managed and controlled by ROCKEFELLER, and repeatedly sexually abused her.

5.     By undertaking to provide child care to infant Plaintiff and her mother, ROCKEFELLER assumed and was under a duty to do so responsibly and without creating a risk of harm to infant Plaintiff.   At the time he enlisted Oliveira to babysit for infant Plaintiff, ROCKEFELLER knew that Oliveira had no qualifications to do anything but drive, and certainly had no qualifications or experience in child care.   In addition, ROCKEFELLER knew or should

have known at that time that Oliveira had a history of domestic abuse, assault, and was, in fact, a sexual predator.

6.     The Defendants cannot, and do not, dispute that Oliveira sexually assaulted infant Plaintiff because documentary evidence exists regarding the Order of Protection issued against Oliveira by New York State Criminal Court as well as Oliveira's prison sentencing for his crimes.

## PARTIES

7.     Plaintiff is an individual residing in Pittsburgh, Pennsylvania.

8.     Plaintiff was born in 1980.

9.     In the spring, summer and fall of 1988, Plaintiff was a minor, 7 years of age.

10.    Upon information and belief, the Estate of David Rockefeller was created following the death of David Rockefeller (June 12, 1915-March 20, 2017).

11.    Defendants David Rockefeller, Jr., Richard E. Salomon and James S. Sligar, are The Executors of the Last Will and Testament of David Rockefeller, Deceased, having been granted Letters Testamentary by Westchester County Surrogate's Court on April 7, 2017.

12.    Defendant David Rockefeller, Jr., as Executor of the Estate of David Rockefeller, maintains a domicile located at 10 Rockefeller Plaza, Room 2500, New York, New York, 10020.

13.    Defendant James S. Sligar, as Executor of the Estate of David Rockefeller, maintains a domicile located at 74 Holland Place, Hartsdale, New York, 10530.

14.    Defendant Richard E. Salomon, as Executor of the Estate of David Rockefeller, maintains a domicile located at 10 Gracie Square, Apt 11/12F, New York, New York, 10028.

15.     Upon information and belief, in 1940, David Rockefeller married Margaret "Peggy" McGrath.  Upon information and belief, Margaret "Peggy" McGrath Rockefeller died in 1996.

16.     Upon information and belief, Defendant David Rockefeller, Jr. was and is a son of ROCKEFELLER and Margaret "Peggy" McGrath Rockefeller, and currently resides at 104 Walker Mills Road, Livingston, New York.

17.     Upon information and belief, Defendant Margaret Dulany Rockefeller ("MDR") was and is a daughter of ROCKEFELLER and Margaret "Peggy" McGrath Rockefeller and currently resides at 765 Bedford Road, Tarrytown, New York.

18.     At all relevant times, Oliveira was hired by ROCKEFELLER as chauffeur to ROCKEFELLER, Margaret "Peggy" McGrath Rockefeller, their children, including Defendant MDR and David Rockefeller, Jr., as well as their guests and business associates.

19.     At all relevant times, Oliveira's assigned duties included acting as a babysitter to Plaintiff and her brother, even though he was unqualified to do so, and posed a risk of child sex abuse.

20.     At all relevant times, ROCKEFELLER resided at 180 Bedford Road, Sleepy Hollow New York (hereinafter "Bedford Road").

21.     At all relevant times, ROCKEFELLER owned, operated, maintained, controlled and managed Bedford Road.

22.     At all relevant times, ROCKEFELLER'S adult daughter, Defendant Margaret Dulany Rockefeller, (hereinafter MDR) maintained a residence at Bedford Road.

23.     At all relevant times, Plaintiff and Plaintiff's mother resided at Bedford Road as a condition of Plaintiff's mother's employment by ROCKEFELLER as a live-in chef to ROCKEFELLER, MDR, the Rockefeller family and their guests at Bedford Road.

24.     At all relevant times, Bedford Road was premises located within the estate known as "Pocantico Hills" and is also known as "Hudson Pines Farm."

25.     Prior to the spring of 1988 ROCKEFELLER owned, operated, maintained, leased, or otherwise controlled an apartment located at the 330 East 75th Street, New York, New York, Apartment 2E  (the "Manhattan residence").

26.     At all relevant times, ROCKEFELLER provided use and unsupervised access to the Manhattan residence to Oliveira as a condition of Oliveira's employment and to further ROCKEFELLER'S business and personal purposes of having a driver located in Manhattan for ROCKEFELLER'S use, and the use of ROCKEFELLER'S family, friends, business associates and guests.

27.     At all relevant times, ROCKEFELLER oversaw, managed, controlled, directed and assigned Oliveira to work on ROCKEFELLER'S premises, including Bedford Road and the Manhattan residence, and with the use of ROCKEFELLER'S chattels, including automobiles.

28.     Upon information and belief, Luis De Oliveira is deceased.

## PRIOR PROCEEDINGS AND JURISDICTION

29.     This action was initially commenced in Supreme Court of the State of New York on February 21, 2020 and was subsequently removed to this Court on March 11, 2020 on diversity grounds. (ECF No. 7.)

30.     This Court has personal jurisdiction over the Defendants, all of whom reside in, or are domiciled in, the State of New York for the purposes of jurisdiction.

31.     Unless otherwise specified, references to acts or omissions by ROCKEFELLER in this Complaint shall mean acts or omissions by ROCKEFELLER individually, or through his agents, representatives, employees and/or servants.

## **FACTUAL ALLEGATIONS**

32.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint.

33.     At all relevant times, Plaintiff's mother was an employee of ROCKEFELLER.

34.     At all relevant times, Oliveira was hired by ROCKEFELLER, and served in position of employee, agent and servant of ROCKEFELLER.

35.     At all relevant times, Oliveira was under the supervision, direction and control of ROCKEFELLER, his agents, employees or representatives.

36.     At all relevant times, Oliveira was an undocumented person.

37.     ROCKEFELLER personally or through an agent, employee or representative, did not at any time obtain references from Oliveira.

38.     ROCKEFELLER, personally or through an agent, employee or representative, did not at any time perform a background check on Oliveira.

39.     ROCKEFELLER, personally or through an agent, employee or representative, did not at any time inquire of Oliveira's criminal history.

40.     ROCKEFELLER, personally or through an agent, employee or representative, did not at any time inquire of Oliveira's history of domestic abuse or sexual assault.

41.     Prior to being hired by ROCKEFELLER, Oliveira had a history of domestic abuse and accusations of sexual assault.

42.     Prior to hiring Oliveira, ROCKEFELLER, his agents, employees or representatives, knew or should have known of Oliveira's history of domestic abuse and accusations of sexual assault.

43.     In or about the spring of 1988 ROCKEFELLER provided Oliveira with at least one automobile to use during the course of his employment by ROCKEFELLER.

44.     Oliveira's job duties included, *inter alia*, driving ROCKEFELLER'S wife, Margaret "Peggy" Rockefeller and their children back and forth between various locations, including Manhattan, Pocantico Hills, and other properties owned and operated by ROCKEFELLER, picking up ROCKEFELLER'S friends and guests at local airports and bringing them to events at various locations, including at properties owned and operated by ROCKEFELLER.

45.     Prior to the spring of 1988 ROCKEFELLER directed or permitted Oliveira, as a condition of his employment, to use the Manhattan residence in the course of his employment. Oliveira had unsupervised access and use of the Manhattan residence throughout the spring of 1988.

46.     At all relevant times, and approximately six to eight times per year, ROCKEFELLER regularly hosted large gatherings of family and friends at Bedford Road. These large gatherings would often last for multiple days.

47.     Plaintiff's mother was required, as a condition of her employment, to live at the Bedford Road residence.  Rockefeller knew when he hired Plaintiff's mother that her two small children, including Plaintiff, would live at the Bedford Road residence.

48.     Plaintiff's mother was required, as a condition of her employment, to prepare the meals for ROCKEFLLER and his guests at the aforesaid large gatherings, entailing long hours in the kitchen on the premises at Bedford Road.

49.     Defendant ROCKEFELLER knew that as a result of her mother's work duties, infant Plaintiff would at times be alone, unsupervised and vulnerable to injury at Bedford Road, including sexual assault.

50.     At all relevant times, Plaintiff was a vulnerable child unable to protect herself, and ROCKEFELLER and Oliveira asserted their authority and control over her.

51.     At all relevant times, ROCKFELLER failed to provide a childcare assistant, nanny or other qualified babysitter to care for Plaintiff and her brother when Plaintiff's mother was fulfilling her employment responsibilities.

52.     In or about the spring of 1988 ROCKEFELLER hosted a large gathering at Bedford Road.   ROCKEFELLER knew that during the large gathering at Bedford Road in the spring of 1988 that Plaintiff's mother would be working long hours in the kitchen, thereby resulting in infant Plaintiff being at times alone, unsupervised and vulnerable to injury on the premises.

53.     ROCKEFELLER undertook to provide child care for the infant Plaintiff during the spring 1988 gathering.  However, he did not hire, obtain or recommend any qualified child care assistance to Plaintiff's mother. Instead, ROCKEFELLER enlisted his employee Oliveira to babysit infant Plaintiff and her brother.

54.     In the performance of his babysitting duties in the spring of 1988, ROCKEFELLER authorized Oliveira to be alone with minor children, including Plaintiff, and to have unfettered and unsupervised access to them on ROCKEFELLER'S property.

55.     By assigning Oliveira to the role of babysitter, ROCKEFELLER gave Oliveira complete access to minors, including Plaintiff, and empowered Oliveira to discipline, punish, reprimand, chastise, and otherwise exercise complete authority over Plaintiff.

56.     During the spring 1988 gathering at Bedford Road, Oliveira, at the direction of and with the knowledge, consent and permission of ROCKEFELLER, individually and/or through his agents, servants and/or employees, took infant Plaintiff and her infant brother off the premises at Bedford Road in an automobile provided by ROCKEFELLER.

57.     As an employee, agent and servant of ROCKEFELLER, Oliveira was, by reason of his authority, directed and permitted to exercise control over infant Plaintiff and take her off the premises of Bedford Road.

58.     During the spring 1988 gathering at Bedford Road, at the direction of and with the knowledge, consent and permission of ROCKEFELLER, individually and/or through his agents, servants and/or employees, Oliveira drove infant Plaintiff and her infant brother to Manhattan and brought them to the Manhattan residence owned, leased, operated, managed, maintained and/or controlled by ROCKEFELLER.

59.     ROCKEFELLER permitted and/or directed Oliveira to stay overnight unsupervised with the infant Plaintiff at the Manhattan residence, owned, leased or otherwise controlled by ROCKEFELLER, where Oliveira brutally sexually assaulted her.

60.     During the night at the Manhattan residence, Oliveira came unclothed into the room where infant Plaintiff was sleeping, and repeatedly sexually assaulted her for many hours throughout the night, including digitally penetrating her vaginally, masturbating, forcing her to touch his genitals, laying unclothed next to her in bed and molesting her.

61.     During the relevant time period, Plaintiff was a minor and did not consent to the sexual contact with Oliveira.

62.     Oliveira's sexual contact with minor Plaintiff was a violation of New York State Penal Law, §130, *et seq.*

63.     The morning after the assaults at the Manhattan residence, Oliveira drove infant Plaintiff and her infant brother in the automobile provided by ROCKEFELLER, back to Bedford Road.   On the way, Oliveira picked up one of ROCKEFELLER'S guests to bring to the gathering at Bedford Road.   During the trip home, infant Plaintiff was physically ill, extremely distressed and exhausted by the repeated assaults on her the night before.  She vomited in the car.

64.     Upon returning to Bedford Road, infant Plaintiff was still physically ill, in distress and exhausted with dark circles under her eyes.   This was visible to ROCKEFELLER and MDR, as well as employees, agents and representatives of ROCKEFELLER and other witnesses.

65.     ROCKEFELLER and MDR did nothing to investigate the cause of the distressed and exhausted condition of infant Plaintiff when Oliveira returned her to Bedford Road after his unsupervised  night with her at the Manhattan residence.

66.     Thereafter and throughout the summer and fall of 1988 Oliveira was repeatedly permitted to seek out infant Plaintiff in unsupervised locations at Bedford Road.

67.     Thereafter and throughout the summer and fall of 1988 Oliveira repeatedly sexually assaulted infant Plaintiff on multiple occasions at Bedford Road, including the upstairs living room.  All of these assaults were reasonably foreseeable to ROCKEFELLER, his agents, servants, employees and representatives, and MDR based upon, *inter alia*, Oliveira's history of domestic abuse and assault, his complete lack of qualifications to act as a babysitter, the facts and circumstances of the spring 1988 gathering, Oliveira's return of infant Plaintiff to Bedford

Road in a distressed and exhausted condition, and based upon the red flags of Oliveira's behaviors as described herein, including seeking out children of ROCKEFELLER's employees, including Plaintiff, in locations where he was not supposed to be and where the children would be unsupervised and alone.

68.     Prior to Oliveira's sexual abuse of Plaintiff, ROCKEFELLER knew or should have known of Oliveira's propensity to commit child sex abuse and to harm Plaintiff.

69.     At all relevant times, ROCKEFELLER permitted Oliveira to have free and unfettered access to infant Plaintiff, her living quarters and other areas where infant Plaintiff would be alone and unsupervised within the premises at Bedford Road, which were owned, operated, managed, controlled and maintained by ROCKEFELLER.

70.     At all relevant times, ROCKEFELLER'S employment of Oliveira did not at any time require his presence in Plaintiff's living quarters or other areas where infant Plaintiff would be alone and unsupervised within the premises at Bedford Road, which were owned, operated, managed, controlled and maintained by ROCKEFELLER.

71.     At all relevant times, ROCKEFELLER failed to instruct Oliveira to not enter infant Plaintiff's living quarters or other areas where infant Plaintiff would be alone and unsupervised within the premises at Bedford Road, which were owned, operated, managed, controlled and maintained by ROCKEFELLER.

72.     At all relevant times, ROCKEFELLER failed to prevent Oliveira from having access to infant Plaintiff, her living quarters or other areas where infant Plaintiff would be alone and  unsupervised within the premises at Bedford Road, which were owned, operated, managed, controlled and maintained by ROCKEFELLER.

73.     At all relevant times, Defendants failed to supervise and control Oliveira and thereby allowed him to have access to infant Plaintiff, her living quarters and other areas where infant Plaintiff would be alone and unsupervised within the premises at Bedford Road, which were owned, operated, managed, controlled and maintained by ROCKEFELLER.

74.     Oliveira had no employment related duties in the upstairs living room at Bedford Road or other locations where he sought out children, including Plaintiff and therefore had none but dangerous purposes in being there.

75.     At all relevant times, through his employment with ROCKEFELLER and his agency on behalf of ROCKEFELLER, Oliveira stood in a position of power and authority in relation to Plaintiff.

76.     At all relevant times, Oliveira used his position of power and authority, conferred upon him by ROCKEFELLER, to coerce infant Plaintiff to comply and remain silent for a substantial period of time.

77.     When Oliveira's sexual abuse of infant Plaintiff was eventually discovered, he was prosecuted by the District Attorney of Manhattan, plead guilty and served prison time.

78.     Upon information and belief, ROCKEFELLER, individually and/or through his agents, servants and employees, and MDR ignored signs and warnings that Oliveira had violent propensities and was a danger to Plaintiff, including but not limited to taking infant Plaintiff off the premises overnight in the car provided by ROCKEFELLER to an apartment provided by ROCKEFELLER, returning Plaintiff to Bedford Road in a distressed and exhausted condition the next morning, seeking infant Plaintiff out in upstairs areas of the house at Bedford Road where Oliveira was not supposed to be and where Plaintiff would be unsupervised and alone, seeking out the children of other ROCKEFELLER employees at Bedford Road, Hudson Pines

Farm, and Pocantico Hills in areas of those premises where he was not supposed to be and where the children would be unsupervised and alone, and was engaging in inappropriate, sexual contact with infant Plaintiff in locations owned, operated, managed, maintained and/or supervised by ROCKEFELLER.

79.    Notwithstanding this knowledge, Defendant ROCKEFELLER, negligently, recklessly, and willfully failed to protect infant Plaintiff from sexual abuse by Oliveira, permitted the sexual abuse of a child to occur with the use of ROCKEFELLER'S chattels and property, failed to supervise Plaintiff or Oliveira, failed to timely investigate Oliveira's misconduct, acted to protect ROCKEFELLER'S family's own self-interest to the detriment of infant Plaintiff, and is otherwise responsible for Oliveira's sexual assault of Plaintiff, and Plaintiff's consequential injuries and damages.

80.    At all relevant times, infant Plaintiff, as the child of ROCKEFELLER'S live-in chef and resident at ROCKEFELLER'S premises at Bedford, was under the direct supervision and control of ROCKEFELLER, individually and/or through his agents, servants and employees.

81.    At all relevant times, Oliveira, as an employee of ROCKEFELLER was under the direct supervision and control of ROCKEFELLER.

82.    At all relevant times, and upon information and belief, ROCKEFELLER either knew or should have known that Oliveira was a danger to Plaintiff, before Oliveira sexually abused Plaintiff, or, alternatively, knew or should have known that he did not have sufficient information about whether or not Oliveira had propensities to commit sexual abuse and pose a risk to children's safety.

83.    At all relevant times, the child sexual abuse of Plaintiff by Oliveira was foreseeable to ROCKEFELLER and MDR.

84.     At all relevant times, Plaintiff was a foreseeable victim of sexual abuse by Oliveira.

85.     At all relevant times, ROCKEFELLER owed Plaintiff a reasonable duty of care by providing her housing, custody and care, including qualified child care, to serve Plaintiff's best interest, provide a safe and secure environment for Plaintiffs' emotional and physical needs, and to protect Plaintiff from abuse from ROCKEFELLER'S employees, including Oliveira.

86.     At all relevant times, ROCKEFELLER owed Plaintiff a duty to protect her from harm because ROCKEFELLER'S acts and omissions created a foreseeable risk of harm to Plaintiff by, *inter alia*, providing her with housing on his premises, in providing her with babysitting services by Oliveira during the spring 1988 gathering, in hiring, retaining, training, supervising and controlling Oliveira, in providing Oliveira with a vehicle which he used to remove Plaintiff from her home, in directing and authorizing Oliveira to take Plaintiff from her home during the spring 1988 gathering, in providing Oliveira with the apartment to which he brought Plaintiff to sexually assault her.

87.     At all relevant times, ROCKEFELLER had a duty to ascertain whether facts existed that would put him on notice that Oliveira was a danger to children, including Plaintiff, with whom he came into contact on ROCKEFELLER'S premises.

88.     At all relevant times, ROCKEFELLER owed Plaintiff a duty arising from the nature of Oliveira's employment, which, because he was not properly supervised, gave Oliveira access to and an ability to interact with children, including infant Plaintiff, thereby creating a situation which involves the risk of harm to Plaintiff.

89.     At all relevant times, ROCKEFELLER took no steps to learn of Oliveira's employment history, history of domestic abuse, assault or criminal history prior to employing him and giving him access to and an ability to interact with children, including Plaintiff.

90.     Had ROCKEFELLER taken steps to learn of Oliveira's employment history, history of domestic abuse, assault or criminal history prior to employing him and giving him access to and an ability to interact with children, including Plaintiff, ROCKEFELLER would have learned that Oliveira had a history of domestic abuse and assault.

91.     At all relevant times, ROCKEFELLER knew or reasonably should have known that his employee, Oliveira, created a specific risk to children residing on ROCKEFELLER'S premises, including Plaintiff, and Plaintiff's injuries herein were the result of said risk.

92.     At all relevant times, ROCKEFELLER knew or reasonably should have known that Oliveira had no professional experience or qualifications related to child care.

93.     At all relevant times, ROCKEFELLER assumed the duty to provide child care services to infant Plaintiff and her mother and thereby owed Plaintiff and her mother a duty to exercise reasonable care in appointing, directing, providing, and permitting child care on ROCKEFELLER'S premises.

94.     At all relevant times, ROCKEFELLER owed Plaintiff a duty by reason of ROCKEFELLER'S special relationship with infant Plaintiff and her mother who was a single mother employed as ROCKEFELLER'S live-in chef, and by taking custody of infant Plaintiff, providing housing for her, providing Oliveira to her as a babysitter during the spring 1988 gathering, permitting Oliveira to take her off the premises of Bedford Road unsupervised, and depriving her of her normal power of self-protection.

95.     At all relevant times, and upon information and belief, Oliveira had exhibited behavior that should have alerted MDR to his violent propensities toward children which created a risk to Plaintiff, including seeking out infant Plaintiff and other children on the premises at Bedford Road, by spending unsupervised time alone with children at Bedford Road and in the Manhattan apartment provided to him by ROCKEFELLER, by taking infant Plaintiff and her infant brother off the premises of Bedford Road to the apartment in Manhattan overnight and returning infant Plaintiff the next day in a distressed and exhausted condition.

96.     At all relevant times, MDR owed Plaintiff a special duty by reason of MDR's special relationship with infant Plaintiff by residing in the same house with infant Plaintiff, and observing the aforesaid behavior and warning signs of the risks Oliveira posed to infant Plaintiff.

97.     To the extent that any Defendant pleads, or otherwise seeks to rely upon Article 16 of the New York Civil Practice Law and Rules (CPLR) to have fault apportioned to another allegedly culpable party, Plaintiff expressly states that Defendants' conduct falls within one or more of the subdivisions of CPLR 1602.

## COUNT ONE

## NEGLIGENT HIRING

98.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

99.     At all relevant times, Oliveira was hired, employed, trained, retained, appointed, assigned, supervised and directed by ROCKEFELLER and was under ROCKEFELLER'S direct supervision, employ and control when he committed the wrongful acts alleged herein.

100.     At all relevant times, ROCKEFELLER had a duty to exercise due care in the hiring, vetting, supervision and direction of Oliveira, so as to protect ROCKEFELLER'S live-in

employees and their children, including infant Plaintiff, who were likely to come into contact with, and/or under the influence or supervision of Oliveira, and to ensure that Oliveira did not use his position as chauffeur to injure ROCKEFELLER'S live-in employees or their infant children by sexual assault, contact, or abuse.

101.    By offering, providing, directing and permitting Oliveira to act as a babysitter to infant Plaintiff during the spring 1988 gathering by taking custody of infant Plaintiff and removing her, unsupervised, from the care and supervision of her mother at Bedford Road, in a vehicle provided by ROCKEFELLER to an apartment in Manhattan provided by ROCKEFELLER, ROCKEFELLER, individually and/or through his agents, servants and/or employees,  had a duty to exercise due care in hiring, vetting and supervising Oliveira in those duties, and to prevent harm from generally foreseeable dangers caused by Oliveira.

102.    By offering, providing, directing and permitting Oliveira to act as a babysitter to infant Plaintiff during the spring 1988 gathering, by taking custody of infant Plaintiff and removing her, unsupervised, from the care and supervision of her mother at Bedford Road, in a vehicle provided by ROCKEFELLER to an apartment in Manhattan provided by ROCKEFELLER,  ROCKEFELLER, individually and/or through his agents, servants and/or employees, had a duty to exercise due care to ensure that Oliveira did not use his position as an employee of ROCKEFELLER and his use of ROCKEFELLER'S chattels and property to injure infant Plaintiff by sexual assault, contact or abuse.

103.    ROCKEFELLER'S offering, providing, directing and permitting Oliveira to act as a babysitter to infant Plaintiff during the spring 1988 gathering and failing to supervise Oliveira in that capacity created a foreseeable risk of harm to infant Plaintiff.

104.   Oliveira engaged in the wrongful conduct described herein with the use of the ROCKEFELLER'S chattels and at premises owned, operated, managed and/or controlled by ROCKEFELLER.

105.   Oliveira engaged in the wrongful conduct described herein while acting in the course and scope of his employment with ROCKEFELLER and/or accomplished the sexual abuse by virtue of his job-created authority.

106.   Prior to hiring Oliveira and prior to offering, providing, directing and permitting Oliveira to infant Plaintiff and her mother as a babysitter, ROCKEFELLER knew that Oliveira had no professional experience or qualifications in child care, and knew or should have known of Oliveira's propensity for violence and/or sexual abuse.

107.   ROCKEFELLER was negligent and failed to use reasonable care in hiring, appointing, assigning, and retention, of Oliveira, failed to properly investigate his background, immigration history, domestic abuse history, sexual assault history and employment history, and/or hired, appointed and/or assigned him to duties where he would come into contact with children, including Plaintiff, when ROCKEFELLER knew or should have known of facts that would make him a danger to children.

108.   ROCKEFELLER'S aforesaid actions and omissions placed Oliveira in a position to cause foreseeable harm to infant Plaintiff.

109.   Oliveira would not have been in a position to sexually abuse Plaintiff had ROCKEFELLER not been negligent in hiring Oliveira.

110.   ROCKEFELLER'S aforesaid actions and omissions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of infant Plaintiff.

111.   The aforesaid actions constituted breach of ROCKEFELLER'S duties to infant Plaintiff.

112.   As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

113.   By the reason of the foregoing, ROCKEFELLER is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT TWO

## NEGLIGENT RETENTION, SUPERVISON AND DIRECTION

114.   Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

115.   At all relevant times, Oliveira was trained, retained, appointed, assigned, supervised and directed by ROCKEFELLER and was under ROCKEFELLER'S direct supervision, employ and control when he committed the wrongful acts alleged herein.

116.   In assigning and directing Oliveira to serve as babysitter to infant Plaintiff in spring of 1988, ROCKEFELLER assumed the duty to provide adequate child care to infant Plaintiff.

117.     At all relevant times, ROCKEFELLER had a duty to exercise due care in the retention, supervision and direction of Oliveira, so as to protect ROCKEFELLER'S live-in employees and their children, including infant Plaintiff, who were likely to come into contact with, and/or under the influence or supervision of Oliveira, and to ensure that Oliveira did not use his position as chauffeur, and babysitter in spring 1988, to injure infant Plaintiff by sexual assault, contact, or abuse.

118.     ROCKEFELLER owed a duty to his live-in employees and their children to train and educate his employees and his administrators and to establish adequate and effective policies and procedures calculated to detect, prevent and address inappropriate behavior and conduct between ROCKEFELLER'S employees and the children of his live-in employees at Bedford Road, including Plaintiff.

119.     ROCKEFELLER failed to train and educate his employees and his administrators and to establish adequate and effective policies and procedures calculated to detect, prevent and address inappropriate behavior and conduct between ROCKEFELLER'S employees and the children of his live-in employees at Bedford Road, including Plaintiff.

120.     ROCKEFELLER owed a duty to supervise and control Oliveira, to assess whether Oliveira's retention as an employee posed a risk of harm to others, and to act upon signs and warnings that Oliveira posed a risk of harm to others, including Plaintiff.

121.     ROCKEFELLER failed to supervise and control Oliveira, failed to assess whether Oliveira's retention as an employee posed a risk of harm to others, and failed to act upon signs and warnings that Oliveira posed a risk of harm to others, including Plaintiff.

122.    ROCKEFELLER knew or should have known of Oliveira's propensity for violence and/or sexual abuse by reason of Oliveira's history, red flags and behaviors as described herein occurring after Oliveira was hired.

123.    By reason of the foregoing, ROCKEFELLER failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

124.    ROCKEFELLER was negligent and failed to use reasonable care in retaining, appointing, supervising, controlling and assigning Oliveira, failed to properly investigate red flags, including the distressed condition of infant Plaintiff upon return from an unsupervised overnight with Oliveira at the Manhattan apartment ROCKEFELLER provided to Oliveira, Oliveira's behavior of seeking out the children of ROCKEFELLER'S employees, at locations at Pocantico Hills where Oliveira had no professional or work-related reason to be, and permitted Oliveira to seek out infant Plaintiff  when she was alone and unsupervised in the upstairs living room at Bedford Road, where Oliveira repeatedly sexually assaulted infant Plaintiff throughout the spring, summer and fall of 1988.

125.    ROCKEFELLER was additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Oliveira and/or in failing to create, institute, and/or enforce rules, policies, procedures and/or regulations to prevent Oliveira's sexual abuse of Plaintiff, and in that he was otherwise negligent, careless and/or reckless.

126.    ROCKEFELLER was negligent and did not use reasonable care by failing to oversee the manner in which Oliveira interacted with other employees and their children, even though ROCKEFELLER knew or should have known that Oliveira posed a threat of sexual abuse to minors; allowed the misconduct describe above to occur and continue; failed to

investigate Oliveira' dangerous activities, failed to timely terminate Oliveira's employment and remove him from the premises; and in that ROCKEFELLER was otherwise negligent.

127.    ROCKEFELLER'S aforesaid acts and omissions placed Oliveira in a position to cause foreseeable harm to infant Plaintiff.

128.    Oliveira would not have been in a position to continue to sexually abuse Plaintiff had ROCKEFELLER not been negligent in the retention, supervision and direction of Oliveira.

129.    ROCKEFELLER'S aforesaid actions and omissions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of infant Plaintiff.

130.    The aforesaid actions constituted breach of ROCKEFELLER'S duties to infant Plaintiff.

131.    As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

132.    By the reason of the foregoing, ROCKEFELLER is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT THREE

## NEGLIGENT, RECKLESS, AND WILLFUL MISCONDUCT

133.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

134.     At all relevant times, ROCKEFELLER and MDR affirmatively and/or impliedly represented to Plaintiff and Plaintiff's mother that Oliveira did not pose a risk of sexually abusing children, and that children, including Plaintiff, would be safe on the premises at Bedford Road and the aforesaid apartment in Manhattan, and in their home.

135.     At all relevant times, ROCKEFELLER and MDR affirmatively and/or impliedly represented to Plaintiff and Plaintiff's mother that they would both be safe on ROCKEFELLER'S premises and in their home, as well as in the custody of Oliveira during the spring 1988 gathering.

136.     At all relevant times, ROCKEFELLER and MDR were negligent in the supervision of infant Plaintiff on the premises at Bedford Road.

137.     At all relevant times, ROCKEFELLER and MDR were negligent in failing to take reasonable steps to protect the infant Plaintiff from sexual abuse.

138.     ROCKEFELLER and MDR knew or should have known that giving Oliveira unfettered access to children in their home, including Plaintiff, posed an unacceptable risk of harm to children, including Plaintiff.

139.     ROCKEFELLER and MDR failed to warn Plaintiff and her mother of the risk of harm posed by Oliveira at Bedford Road and at the apartment in Manhattan provided to Oliveira and at all other locations where Oliveira had access to infant Plaintiff.

140.    ROCKEFELLER and MDR failed to remove Oliveira from the property and ignored warning signs and red flags described herein indicating that Oliveira posed a danger to children, including Plaintiff.

141.    The conduct of ROCKEFELLER and MDR as described herein was a breach of their duties to exercise reasonable care under the circumstances, and was done with utter disregard as to the potential profound injuries which would ensue, and with depraved indifference to the health and well-being of children, and to the fact that ROCKEFELLER subjected his live-in employee's daughter, Plaintiff, to sexual crimes.

142.    ROCKEFELLER'S and MDR's aforesaid actions were negligent, reckless, willful and wonton in their disregard for the rights and safety of children, including Plaintiff.

143.    Oliveira would not have been in a position to sexually abuse Plaintiff had ROCKEFELLER and MDR not been negligent or had given Plaintiff or her mother proper warnings.

144.    As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

145.    By the reason of the foregoing, ROCKEFELLER and MDR are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT FOUR

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

146.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

147.    The sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized world.

148.    ROCKEFELLER'S and MDR's aforesaid negligent, grossly negligent, and reckless misconduct endangered Plaintiff's safety and caused her to fear for her own safety.

149.    ROCKEFELLER and MDR knew during the spring 1988 gathering that infant Plaintiff was returned to Bedford Road in a state of extreme distress and exhaustion after an unsupervised night in the custody of Oliveira at the Manhattan residence ROCKEFELLER provided to Oliveira, but failed to investigate the occurrence or remove Oliveira from the premises.  This constitutes a special circumstance where ROCKEFELLER'S and MDR'S failure to investigate and take action created a special likelihood of further emotional distress and injury to infant Plaintiff.

150.    ROCKEFELLER and MDR knew or disregarded the substantial probability that Oliveira's continued employment and/or presence would cause severe emotional distress to infant Plaintiff if he continued to have access to her.  Indeed that substantial probability came to pass when Oliveira continued to sexually assault and abuse infant Plaintiff on multiple occasions thereafter.

151.    ROCKEFELLER's and MDR's failure to act despite facts and circumstances indicating that Oliveira had injured Plaintiff during an unsupervised overnight with Oliveira at the Manhattan residence during the spring 1998 gathering was calloused, extreme and

outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized world.

152.    As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

153.    By the reason of the foregoing, ROCKEFELLER and MDR are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT FIVE

## PREMISES LIABILITY

154.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

155.    At all relevant times, ROCKEFELLER owned, maintained, operated, and/or controlled the premises at Bedford Road where he and infant Plaintiff lived, including the areas where the sexual abuse of infant Plaintiff occurred.

156.    At all relevant times, ROCKEFELLER failed to protect Plaintiff from sexual assault by another employee at Bedford Road, including Oliveira.

157.    At all relevant times, ROCKEFELLER, individually and/or through his agents, servants and/or employees, owned, maintained, operated, and/or controlled the premises at the

Manhattan residence, New York, New York apartment 2E, where the first acts of sexual abuse of infant Plaintiff by ROCKEFELLER'S employee Oliveira occurred.

158.    At all relevant times, Plaintiff was rightfully present at the aforementioned premises at Bedford Road and the premises at the Manhattan residence.

159.    ROCKEFELLER had a duty to see that the premises at which Plaintiff was rightfully present were in a reasonably safe condition for the intended use by children, including Plaintiff, whose presence at those locations was reasonably anticipated and indeed known to ROCKEFELLER.

160.    ROCKEFELLER'S duty was heightened by the infant Plaintiff's youth, inexperience, gullibility, trustfulness, innocence, lack of physical strength, vulnerability and lack of capacity to provide for her own safety at Bedford Road and at the Manhattan residence, New York, New York.

161.    At all relevant times, ROCKEFELLER had actual or constructive notice that Oliveira posed a risk of harm on ROCKEFELLER'S premises at Bedford Road and the Manhattan residence.

162.    ROCKEFELLER willfully, recklessly, and negligently failed to provide reasonably safe premises that were free from the presence of sexual predators including Oliveira, and/or the assault by the occupants of the premises, including Oliveira.  ROCKEFELLER thereby breached his duty of care of Plaintiff.

163.    As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages,

medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

164.    By the reason of the foregoing, ROCKEFELLER is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT SIX

## BREACH OF FIDUCIARY DUTY

165.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

166.    At all relevant times, there existed a fiduciary relationship of trust, confidence and reliance between infant Plaintiff and ROCKEFELLER, who owned, operated, managed and maintained the premises at Bedford Road, who provided housing at Bedford Road to infant Plaintiff, her single mother and infant brother, who provided Oliveira to infant Plaintiff as a babysitter during the spring 1988 gathering, and who had an opportunity to observe the warning signs and red flags raised by Oliveira's history and behavior, and had an opportunity to observe the risks posed to infant Plaintiff by Oliveira.

167.    As the daughter of ROCKEFELLER'S live-in chef who was a single mother, infant Plaintiff and her mother had a relationship with ROCKEFELLER, his agents, servants and employees, and MDR that was distinct from other employees of ROCKEFELLER.

168.    The entrustment of infant Plaintiff to the care and supervision of ROCKEFELLER, individually and/or through his agents, employees and/or servants, while

Plaintiff was a vulnerable child imposed upon ROCKEFELLER a fiduciary duty to act in the best interests of Plaintiff.

169.    ROCKEFELLER, individually and/or through his agents, employees and/or servants were entrusted with the well-being, care, and safety of Plaintiff, which ROCKEFELLER had a duty to protect.

170.    At all relevant times, there existed a fiduciary relationship of trust, confidence and reliance between infant Plaintiff and MDR, who was an adult residing at Bedford Road and who had an opportunity to observe on a daily basis the warning signs and red flags raised by Oliveira's history and behavior, and had an opportunity to observe the risks posed to infant Plaintiff by Oliveira.

171.    Plaintiff and her mother relied upon the fiduciary relationships and duty established by ROCKEFELLER and MDR in providing Plaintiff and her mother with housing and with child care and babysitting services by Oliveira during the spring 1988 gathering.

172.    By reason of the foregoing facts and circumstances described herein, ROCKEFELLER and MDR breached their fiduciary duty to Plaintiff.

173.    As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

174.    By the reason of the foregoing, ROCKEFELLER and MDR are liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

## COUNT SEVEN

### *RESPONDEAT SUPERIOR*

175.    Plaintiff repeats the allegations above as if set forth fully herein.

176.    At all relevant times, Oliveira was acting on ROCKEFELLER'S behalf, during and/or within the course and scope of his agency and employment, and thereby gained access to Plaintiff, and used the powers and influence of his position and status as an actual and apparent agent of ROCKEFELLER to sexually abuse Plaintiff while in the State of New York.

177.    ROCKEFELLER'S agents, servants and/or employees were reasonably on notice that a person in Oliveira's position could exploit the power of their position and that such relationship with minors could enable that person to abuse and sexually molest them.

178.    ROCKEFELLER'S agents, servants and/or employees were reasonably on notice Oliveira posed a danger to infant Plaintiff by reason of his behavior at Bedford Road (*inter alia*, having a history of domestic abuse and assault, seeking out children of other employees in locations on the premises where he was not supposed to be, taking infant Plaintiff and her infant brother off the premises at Bedford Road and to an apartment in Manhattan provided to him by ROCKEFELLER and returning infant Plaintiff the next day in a condition of extreme distress and exhaustion, seeking out infant Plaintiff in locations where he was not supposed to be and where she was alone and unsupervised) could exploit the power of his position and that such relationship with minors could enable Oliveira to abuse and sexually molest them.

179.     ROCKEFELLER, through his agents, servants and/or employees breached the duties imposed on them created by their notice that Oliveira posed a danger to infant Plaintiff.

180.     ROCKEFELLER, by and through his agents, servants, and employees, acting within the ROCKEFELLER'S control, supervision and direction,   breached their duties to Plaintiff and as such are liable to Plaintiff under *respondeat superior*, agency, implied agency, actual authority and apparent authority.

181.     As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

182.     By the reason of the foregoing, ROCKEFELLER is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

**COUNT EIGHT**

**BREACH OF DUTY *IN LOCO PARENTIS***

183.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

184.     At all relevant times, Plaintiff was a vulnerable child entrusted to the care of ROCKEFELLER, and was under the supervision and control of ROCKEFELLER, individually

and/or through his agents, servants and/or employees, such that ROCKEFELLER owed her a duty to act *in loco parentis* and to prevent foreseeable injuries.

185.   At all relevant times, Plaintiff was a vulnerable child entrusted to the care of MDR, and was under the supervision and control of MDR such that MDR owed her a duty to act *in loco parentis* and to prevent foreseeable injuries.

186.   In providing, directing, offering and permitting his employee Oliveira to serve as babysitter for infant Plaintiff, ROCKEFELLER assumed the duty to act *in loco parentis* with respect to those child care services.

187.   By offering, directing and permitting Oliveira to act as babysitter for infant Plaintiff during the spring 2008 gathering at Bedford Road, as discussed herein, ROCKEFELLER owed infant Plaintiff a duty to act *in loco parentis* and to prevent foreseeable injuries.

188.   By offering and permitting Oliveira to act as babysitter for infant Plaintiff during the spring 2008 gathering at Bedford Road, as discussed herein, MDR, owed infant Plaintiff a duty to act *in loco parentis* and to prevent foreseeable injuries.

189.   By reason of the foregoing facts and circumstances described herein, Defendants ROCKEFELLER and MDR breached their duties to act *in loco parentis*.

190.   As a direct and proximate result of the foregoing, Plaintiff sustained severe injuries, great pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety, was and will continue to be deprived of the enjoyment of life's pleasures, has suffered and will continue to suffer loss of spirituality, as well as pecuniary damages, lost wages, medical expenses and psychological treatment expenses, out of pocket expenses and loss of

fringe benefits, and was limited in her normal daily activities and was otherwise injured and damaged.

191.    By the reason of the foregoing, ROCKEFELLER is liable to Plaintiff for compensatory and punitive damages, in an amount to be determined at trial, together with interest and costs.  For purposes of jurisdiction, Plaintiff's damages exceed one million dollars.

**WHEREFORE**, Plaintiff prays for judgment as follows:

a.   Awarding Plaintiff compensatory damages for her injuries, in an amount to be determined at trial;

b.   Awarding Plaintiff punitive damages for her injuries, in an amount to be determined at trial;

c.   Awarding Plaintiff prejudgment interest, to the extent available by law;

d.   Awarding Plaintiffs costs and disbursements and attorneys' fees to the extent available by law; and

e.   Awarding such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

192.   Plaintiff demands a trial by jury of all issues triable by jury in this action.

Dated: December 1, 2020

Yours, etc.
**PHILLIPS & PAOLICELLI, LLP**
By *Danielle George*

Danielle George
dgeorge@p2law.com
Diane Paolicelli
dpaolicelli@p2law.com
*Attorneys for Plaintiff*
747 Third Avenue, Sixth Floor
New York, New York 10017
212-388-5100

{00057185}