UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------X
                                        :
C.Q.,                                   :
                                        :
                            Plaintiff,  :
                                        :
            - against -                 :
                                        :
                                        :
ESTATE OF DAVID ROCKEFELLER et al.,     :
                                        :
                            Defendants. :
                                        :
---------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___10/21/2021___

20-CV-2205 (VSB)

**OPINION & ORDER**

Appearances:

Danielle George
Phillips & Paolicelli, LLP
New York, NY
*Counsel for Plaintiff*

Michael C. Lynch
John M. Callagy
Randall L. Morrison, Jr.
Kelley Drye & Warren LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff C.Q. ("Plaintiff") brings this action against Defendants Estate of David

Rockefeller (the "Estate"), David Rockefeller, Jr. ("Rockefeller Jr."), Margaret Dulany

Rockefeller ("Dulany"), Richard E. Salomon ("Salomon"), and James S. Sligar ("Sligar," and

together with the Estate, Rockefeller Jr., Dulany, and Salomon, "Defendants") for compensatory

and punitive damages under the New York Child Victims Act ("CVA"), N.Y. C.P.L.R. § 214-g.

(Doc. 29.)  Before me is the motion to dismiss Plaintiff's Amended Complaint, and motion to

strike Plaintiff's request for punitive damages, filed by Defendants.  (Doc. 36.)  For the

foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and Defendants' motion to strike is GRANTED.  Defendants' request for oral argument related this motion, (Doc. 40), is DENIED as moot.

## I.      **Factual Background**[1]

Plaintiff was born in 1980 and is a resident of Pittsburgh, Pennsylvania.  (Am. Compl. ¶¶ 7–8.)[2]  The Estate was created upon the death of David Rockefeller ("Rockefeller") in 2017.  (*Id.* ¶ 10.)  Rockefeller Jr., Rockefeller's son, (*id.* ¶ 16), Salomon, and Sliger are the executors of the last will and testament of David Rockefeller, (*id.* ¶ 11).  Dulany is Rockefeller's daughter.  (*Id.* ¶ 17.)

Rockefeller hired Plaintiff's mother as a live-in chef at his home at 180 Bedford Road, Sleepy Hollow, NY ("Bedford Road") in the 1980s.  (*Id.* ¶¶ 3, 20.)  Plaintiff, her brother, and her mother lived at the Bedford Road residence during Plaintiff's mother's employment with Rockefeller.  (*Id.* ¶ 23.)  Prior to the spring of 1988, Rockefeller "owned, operated, maintained, leased, or otherwise controlled an apartment located at the 330 East 75th Street, New York, New York, Apartment 2E" (the "Manhattan Apartment").  (*Id.* ¶ 25.)  During the relevant time period, Rockefeller also employed Luis Oliveira ("Oliveira"), who is now deceased, (*id.* ¶ 28), as a chauffeur to Rockefeller, his wife, their children, and Rockefeller's other guests and associates, (*id.* ¶ 18).  "Prior to the spring of 1988 ROCKEFELLER directed or permitted Oliveira, as a condition of his employment, to use the Manhattan [Apartment] in the course of his employment.  Oliveira had unsupervised access and use of the Manhattan residence throughout the spring of

---

[1] The facts set forth herein are taken from the allegations contained in Plaintiff's Amended Complaint.  (Doc. 29.)  I assume Plaintiff's allegations in the Amended Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint filed on December 11, 2020.  (Doc. 29.)

1988." (*Id.* ¶ 45.)  Before Rockefeller hired Oliveira, he did not obtain any references from him, perform a background check, inquire about his criminal history, or inquire about any history of sexual assault or domestic violence.  (*Id.* ¶¶ 37–40.)  Prior to Rockefeller hiring him, Oliveira had a history of domestic violence and accusations of sexual assault.  (*Id.* ¶ 41.)

The core events at issue in this litigation took place in 1988, when Plaintiff was seven years old.  (*Id.* ¶ 9.)  Approximately six to eight times per year, Rockefeller would host large, multi-day gatherings of friends and family, which would require Plaintiff's mother to spend long hours working in the kitchen to prepare meals for the guests.  (*Id.* ¶¶ 46, 48.)  Rockefeller held one such gathering in the spring of 1988.  (*Id.* ¶ 52.)  Rockefeller decided to provide child care for Plaintiff and her brother while their mother worked in the kitchen, but he declined to hire a qualified babysitter or childcare professional, instead enlisting Oliveira to look after the children. (*Id.* ¶¶ 51, 53.)  During this particular spring 1988 gathering, while Plaintiff's mother was working, Oliveira drove Plaintiff and her brother from Bedford Road to Rockefeller's Manhattan Apartment.  (*Id.* ¶ 58.)  Oliveira and the two children stayed overnight at the Manhattan Apartment, where Oliveira sexually assaulted Plaintiff.  (*Id.* ¶ 60.)  The following morning, Oliveira drove the children back to Bedford Road.  (*Id.* ¶ 63.)  On the ride home, Plaintiff was distressed and physically ill and vomited in the car; she remained visibly ill, exhausted, and in distress when she arrived at Bedford Road.  (*Id.* ¶¶ 63–64.)  Rockefeller and Dulany saw Plaintiff's condition but did not investigate further.  (*Id.* ¶ 64–65.)

Throughout the summer and fall of 1988, Oliveira sexually assaulted Plaintiff on multiple occasions at Bedford Road.  (*Id.* ¶ 67.)  While Oliveira's employment did not require him to be in Plaintiff's living quarters or other areas where Plaintiff would be alone at Bedford Road, Rockefeller did not instruct him not to enter these areas.  (*Id.* ¶¶ 70–71, 74.)  After his sexual

abuse of Plaintiff came to light, Oliveira was prosecuted by the Manhattan District Attorney and pleaded guilty.  (*Id.* ¶ 77.)

## II.   **Procedural History**

Plaintiff commenced this action by filing a Summons and Verified Complaint in the Supreme Court of New York, New York County, on February 21, 2020.  (Doc. 7-3, Ex. A.)  In addition to the Estate, Rockefeller Jr., and Dulany, the complaint named the following additional individuals as defendants:  Abigail Aldrich Rockefeller ("Aldrich"), Neva Rockefeller Goodwin ("Goodwin"), and Eileen Rockefeller Growald ("Growald").  (*Id.*)  Growald and Aldrich filed a notice of removal on March 11, 2020, on grounds of diversity jurisdiction.  (Doc. 1 ¶ 7.)  On September 23, 2020, I denied Plaintiff's motion to remand this case to state court.  (Doc. 15.)

On November 9, 2020, the Estate, Rockefeller Jr., and Dulany, along with Goodwin, Aldrich, and Growald, filed a motion to dismiss Plaintiff's complaint.  (Doc. 20.)  On December 1, 2020, Plaintiff filed her Amended Complaint against the same parties.[3]  (Doc. 23.)  A day later, I granted Plaintiff's notice of voluntary dismissal of all claims against Aldrich, Goodwin, and Growald.  (Doc. 25.)  On December 9, 2020, the Estate, Rockefeller Jr., and Dulany requested the opportunity to file a new motion to dismiss.  (Doc. 27.)  The next day, I denied the earlier motion to dismiss as moot.  (Doc. 28.)

On February 12, 2021, Defendants filed a motion to dismiss Plaintiff's Amended Complaint and motion to strike Plaintiff's request for punitive damages, and an accompanying memorandum of law.  (Docs. 36–37.)  Plaintiff filed her memorandum of law in opposition to Defendants' motion on March 12, 2021, along with a declaration and two exhibits.  (Doc. 38.)

---

[3] On December 11, 2020, Plaintiff re-filed her Amended Complaint in order to (1) cure certain procedural problems, and (2) add Salomon and Sligar as Defendants.  (Doc. 29.)

Briefing on this motion was complete when Defendants filed their reply memorandum of law on March 31, 2021.  (Doc. 39.)  On that same day, Defendants filed a letter motion for oral argument on their motion.  (Doc. 40.)

### III.   Legal Standards

#### A.   *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

A complaint is "deemed to include any written instrument attached to it as an exhibit or

any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### B.    *Rule 12(f)*

Rule 12(f) of the Federal Rules of Civil Procedure "provides courts a means to remove material from a pleading that it finds 'redundant, immaterial, impertinent, or scandalous.'" *Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488 (CM), 2018 WL 6985227, at *9 (S.D.N.Y. Dec. 10, 2018) (quoting Fed. R. Civ. P. 12(f)).  "[M]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks omitted).  "To prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (internal quotation marks omitted).

### IV.    <u>Discussion</u>

As a preliminary matter, Defendants do not contest—and I find—that Plaintiff's suit is timely under the CVA.  The CVA, "which became effective on February 14, 2019, extended the statute of limitations for certain state law claims of sexual abuse; it 'requires revived claims to be brought not earlier than six months after and not later than one year and six months after the effective date of the law.'" *Caldwell v. City of New York*, 21-CV-6560 (LTS), 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) (footnote omitted) (quoting N.Y. C.P.L.R. § 214-g).  Plaintiff's suit, filed just over a year after the law went into effect, was timely filed, even without

accounting for the fact that "[t]he deadline for filing suit was later extended to August 14, 2021, due to the COVID-19 pandemic." *Id.*

Plaintiff's Amended Complaint contains eight counts:  (1) respondeat superior; (2) breach of duty *in loco parentis*; (3) negligent infliction of emotional distress ("NIED"); (4) premises liability; (5) breach of fiduciary duty; (6) negligent, reckless, and willful misconduct;  (7) negligent hiring; and (8) negligent retention, supervision, and direction.  (*See* Doc. 29.)  I address each of these claims below.

### A.    *Respondeat Superior*

"To state claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (internal quotation marks omitted). "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."  *Swarna v. Al-Awadi*, 622 F.3d 123, 144–45 (2d Cir. 2010) (internal quotation marks omitted); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault.").  As such, it is clear that respondeat superior liability is inappropriate here.

In her opposition brief, Plaintiff does not meaningfully contest the fact that Oliveira's conduct is not imputable to Defendants, instead arguing only that her respondeat superior claim "is not limited to Oliveira" and instead extends to "Rockefeller's agents, servants and/or employees [who] were reasonably on notice that Oliveira posed a danger to [Plaintiff] and that

Rockefeller's agents, servants and employees . . . breached their duties to Plaintiff." (Doc. 38, at 24 (citing Am. Compl. ¶¶ 178–79).) Yet Plaintiff does not name these employees, nor does she allege any specific facts as to any of them about the purportedly tortious acts they undertook. Plaintiff's respondeat superior claim has no merit and must be dismissed.

### B. *Breach of Duty In Loco Parentis, Negligent Infliction of Emotional Distress, and Premises Liability*

Under New York law, claims are duplicative when both "arise from the same facts and seek the identical damages for each alleged breach." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (internal quotation marks omitted). In this way, Plaintiff's claims for breach of duty *in loco parentis*, NIED, and premises liability are essentially indistinguishable from her negligence and negligent hiring and retention claims. For all claims, Plaintiff alleges that (1) Defendants breached their duty to Plaintiff despite the fact that her injuries were reasonably foreseeable, and (2) the sexual assault occurred as a result. In this way, these claims all concern the same core facts and same injury.

### 1. *In Loco Parentis*

Plaintiff's claim for breach of duty *in loco parentis*, (*see* Am. Compl. ¶¶ 183–91), is improper as a standalone claim. Rather than operating as its own claim, *in loco parentis* is a potential duty that a defendant might owe to a plaintiff, thus satisfying the first element of a common-law negligence claim. "*[I]n loco parentis* defines the duty owed within the context of a negligence cause of action, but does not create an independent cause of action." *O'Reilly v. Archdiocese of New York*, No. 950261/2019, 2021 WL 4706417, at *3 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 08, 2021); *see also Rydzynski v. N. Shore Univ. Hosp.*, 262 A.D.2d 630, 630 (2d Dep't 1999) (analyzing *in loco parentis* in the context of whether "the defendant owed the plaintiff [a] duty" as it pertained to plaintiff's "common-law negligence" claim). Here, "Plaintiff virtually

concedes that his *in loco parentis* claim is subsumed within his negligence claim," *PC-41 Doe v. Poly Prep Country Day Sch.*, 20-CV-03628 (DG) (SJB), 2021 WL 4310891, at *15 (E.D.N.Y. Sept. 22, 2021), acknowledging that "[w]hether *in loco parentis* is classified as a claim or just a way to prove that Defendants owed Plaintiff a duty is a distinction without difference" and that Defendants might be "correct that *in loco parentis* is not a freestanding claim," (Doc. 38, at 24–25). Accordingly, I dismiss this claim but will discuss *infra* the possibility that Rockefeller owed Plaintiff a duty *in loco parentis* in the context of Plaintiff's negligence claim.

### 2.   NIED and Premises Liability Claims

Further, "in similar CVA actions, both NIED and premises liability claims have been dismissed as duplicative of other tort claims." *PC-41 Doe*, 2021 WL 4310891, at *15 (collecting cases). Plaintiff argues that her premises liability claim is not duplicative of her negligence claims in this action because it "has distinct elements from the general negligence claims." (Doc. 38, at 22.) To the extent this is true, it is irrelevant—the key inquiry in determining whether a claim is duplicative is not whether the legal elements are distinct, but whether the facts alleged and injuries asserted are distinct. *See Lawrence K. v. Westchester Day Sch.*, 196 A.D.3d 637, 638 (2d Dep't 2021) ("[T]he court properly directed the dismissal of that cause of action as duplicative since it arose from the same facts as the negligent supervision and negligent retention causes of action and does not allege distinct damages"). As such, I dismiss these claims as duplicative of Plaintiff's claims for negligence, gross negligence, and negligent retention and supervision which, as noted *infra*, survive Defendants' motion to dismiss.

### C.   *Breach of Fiduciary Duty*

"To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Capital S.A.R.L. v.*

*Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (internal quotation marks omitted).  "A fiduciary

relationship exists between two persons when one of them is under a duty to act for or to give

advice for the benefit of another upon matters within the scope of the relation."  *Lynch v. Nat'l*

*Prescription Adm'rs, Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020) (internal quotation marks

omitted); *see also WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2d Dep't 2001) ("A

fiduciary relationship may exist where one party reposes confidence in another and reasonably

relies on the other's superior expertise or knowledge").

      In order to establish a fiduciary relationship, Plaintiff attempts to analogize to New York

cases in which "child sex abuse victim[s]" bring tort claims against "a church." (Doc. 38, at 23).

These cases hold that a fiduciary relationship arises where factual allegations indicate "that

[Plaintiff's] relationship[] with [D]efendants [was] unique or distinct from [D]efendants'

relationships" with others.  *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 796 (3d

Dep't 2005).[4]  Plaintiff argues that the fact that Defendants provided Plaintiff with "childcare

and an unsupervised overnight trip to Manhattan" somehow makes this relationship "unique" as

compared to the other employees or individuals who resided at Rockefeller's property.  (Doc. 38,

at 23.)  Even on its own terms, this argument makes little sense, because Plaintiff pleads no facts

from which to infer any sort of uniqueness.  There is nothing in Plaintiff's Amended Complaint,

for example, suggesting that Rockefeller did not house other children in his various properties,

including the children of other employees and/or cooks.  More to the point, Plaintiff has failed to

plead facts tending to show "a relationship of higher trust" in which any Defendant was "under a

duty to act for or to give advice for the benefit of" Plaintiff."  *Lynch*, 795 F. App'x at 69.

---

[4] I note that, in her briefing, Plaintiff misrepresents *Holy See*.  (*See* Doc. 38, at 23.)  In that case, the Third
Department found that plaintiffs' allegations that the church provided them with pastoral and educational services
amounted to "boilerplate" allegations that rendered the record "wholly devoid" of any unique qualities necessary for
a fiduciary relationship.  17 A.D.3d at 795–96.

Although Defendants technically provided childcare for Plaintiff, there are no allegations that anyone other than Oliveira—including Rockefeller or Dulany—spent time with Plaintiff, or that any Defendants even attempted to provide guidance or advice for Plaintiff's benefit.  At most, Plaintiff's Amended Complaint alleges facts suggesting that Rockefeller did not take childcare responsibilities seriously enough, as he failed to hire a qualified babysitter and instead enlisted Oliveira, his chauffeur, to provide childcare.  (*See* Am. Compl. ¶ 51.)  This does not establish a relationship of trust.  Therefore, the claim must be dismissed.

### D.   *Negligent, Reckless, and Willful Conduct*

#### 1.  **Negligence**

"To prevail on a negligence claim, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 332 (S.D.N.Y. 2015) (internal quotation marks omitted).  "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."  *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (internal quotation marks omitted).  "[A]bsent a special relationship, a defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *Rabin v. Dow Jones & Co.*, No. 14–cv–4498, 2014 WL 5017841, at *2 (S.D.N.Y. Sept. 23, 2014) (internal quotation marks and alterations omitted).

I find that Rockefeller had a duty to Plaintiff by virtue of his status as a landowner. Plaintiff alleges that her mother "was required, as a condition of her employment, to live at the Bedford Road residence."  (Am. Compl. ¶ 47.)  Therefore, Plaintiff's mother and her children

lived in a property owned and run by Rockefeller by virtue of an agreement or contract. "Generally, a landowner owes a duty of care to maintain his or her property in a reasonably safe condition." *Agbosasa v. City of N.Y.*, 168 A.D.3d 794, 796 (2d Dep't 2019). "That duty is premised on the landowner's exercise of control over the property, as the person in possession and control of property is best able to identify and prevent any harm to others." *Gronski v. Cnty. of Monroe*, 18 N.Y.3d 374, 379 (2011) (internal quotation marks omitted). "[A]n owner of realty has a duty to maintain its property in a safe condition[,] which includes undertaking minimal precautions to protect the public from reasonably foreseeable criminal acts of third persons." *Polomie v. Golub Corp.*, 226 A.D.2d 979, 980 (3d Dep't 1996). Put another way, landowners have a "duty to protect against criminal acts to tenants and others who might reasonably be expected to be on the premises." *Stickle v. City-Wide Sec. Servs., Inc.*, 839 F. Supp. 207, 209 (S.D.N.Y. 1993) (citation omitted). Therefore, given that Plaintiff lived on the property and also was an individual who should have reasonably been expected to be on Rockefeller's property, Rockefeller owed her a duty. By contrast, the landowner duty does not attach to Dulany because she did not own the Bedford Road property.

I also find that Rockefeller likely had a duty to Plaintiff based on his status as a de facto landlord. *See Fazi v. United States*, 935 F.2d 535, 540 (2d Cir. 1991) (listing "landlord-tenant" as an example of a "special relationship" for purposes of a negligence analysis). This special relationship category is not a perfect fit, given that there is no indication that Plaintiff's mother paid Rockefeller rent—although it is conceivable that her salary may have been impacted by her receipt of free lodging—and "[s]pecial relationships" in the context of establishing a duty to third parties "have previously been relegated to quite narrow settings." *Rabin*, 2014 WL 5017841, at *2. That said, Plaintiff alleges that her mother and she resided at Bedford Road "as a condition

of Plaintiff's mother's employment," (Am. Compl. ¶ 23)—meaning that Plaintiff and her mother

lived at a residence owned by Rockefeller by virtue of a contractual relationship. "Landlords are

subject to a common-law duty to take minimal precautions to protect tenants from foreseeable

harm, including harm from the foreseeable criminal conduct of third persons." *Scurry v. N.Y.C.*

*Hous. Auth.*, 193 A.D.3d 1, 5 (2d Dep't 2021). Landlords also have the same duty to protect

"guests . . . from reasonably foreseeable harm, including foreseeable criminal acts of third parties

on the premises." *DeCrescente v. Catholic Charities*, 89 A.D.3d 1272, 1273 (3d Dep't 2011).

As a de facto landlord, Rockefeller owed a duty to Plaintiff to take precautions to protect her

from foreseeable harm from Oliveira. As with Rockefeller's duty as a landowner, this duty

similarly does not extend to Dulany, who was not a landlord or de facto landlord to Plaintiff or

her mother.[5]

　　　　Taking Plaintiff's allegations as true for purposes of this motion, I find that Plaintiff has

sufficiently alleged that Rockefeller breached his duty as a landowner and *quasi* landlord in order

to survive a motion to dismiss. As a preliminary matter, "because questions concerning what is

---

[5] Given that I have found that Rockefeller had a duty to Plaintiff as a landowner, and likely one as a landlord, I do not need to determine at this time—and decline to determine at this time—whether or not Rockefeller had a duty to Plaintiff *in loco parentis*. Under this doctrine, "school districts act in loco parentis with respect to their minor students because they take physical custody of them," meaning that "schools are responsible for supervising their students with the same degree of care as a parent of ordinary prudence would exercise in comparable circumstances." *Digiorgio v. Roman Catholic Diocese of Brooklyn*, 520009/2019, 2021 NYLJ LEXIS 495, at *23– 24 (N.Y. Sup. Ct. Kings Cnty. Apr. 22, 2021). Plaintiff alleges that "Rockefeller undertook to provide child care for [Plaintiff]," and that in doing so, he "enlisted . . . Oliveira" to be Plaintiff's caretaker. (Am. Compl. ¶ 53.) In the criminal context at least, "[a] babysitter undertaking responsibility for a helpless child does have an affirmative duty to provide adequate care." *People v. Goddard*, 206 A.D.2d 653, 655 (3d Dep't 1994). Given that Rockefeller affirmatively "undertook to provide child care" for Plaintiff, it is possible that he was acting *in loco parentis* as a sort of caretaker, babysitter, or childcare provider. That said, it is unclear whether any such duty would apply to Rockefeller rather than Oliveira himself. And New York courts have been reluctant to apply the doctrine of *in loco parentis* too far outside the school context. *See Digiorgio*, 2021 NYLJ LEXIS 495, at *24 ("It does not appear . . . that the doctrine of in loco parentis can simply be applied to churches by way of analogy to schools"); *Williams v. Weatherstone*, 23 N.Y.3d 384, 401 (2014) (noting that a "school's duty of care does not extend beyond school premises, and is limited to injury that occurred shortly after school hours upon the student's departure from the school," suggesting that *in loco parentis* perhaps might not apply to things like after-school programs (internal quotation and alteration marks omitted)). While I am somewhat skeptical as to Plaintiff's *in loco parentis* argument after reviewing the applicable case law, I cannot dismiss her argument entirely at this time. The discovery process will help determine in greater detail Rockefeller's status as a childcare provider to Plaintiff.

foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." *Becker v. Poling Trans. Corp.*, 356 F.3d 381, 392 (2d Cir. 2004) (alteration marks omitted); *see also Scurry*, 193 A.D.3d at 6 ("[F]oreseeability is generally an issue for the finder of fact").  Therefore, I do not think it would be appropriate at this early stage to determine, as a matter of law, that Oliveira's criminal sexual assault was not foreseeable to Rockefeller.

In particular, I find that Plaintiff has plausibly alleged that Rockefeller breached his duty to Plaintiff based on three main categories of factual allegations.  First, Plaintiff alleges that Rockefeller failed, at any time, to check Oliveira's references, perform a background check on Oliveira, or inquire about his criminal history or history of sexual assault.  (Am. Compl. ¶¶ 37–40.)  Given that Plaintiff alleges that Oliveira had a prior "history of domestic abuse and accusations of sexual assault," she has plausibly alleged that Rockefeller's failure to conduct due diligence constitutes a breach of duty.[6]  As I note *infra*, Rockefeller was not required to conduct a background check for purposes of the negligent hiring inquiry.  Yet, the standard for negligent hiring—that the "employer knew or should have known of the employee's propensity for the conduct," *Alsaud*, 12 F. Supp. 3d at 680 (internal quotation marks omitted)—is a separate and more stringent standard than Rockefeller's duty as a landowner to protect against reasonably

---

[6] Defendants erroneously argue that Plaintiff's allegation that Oliveira had a prior "history of domestic abuse and accusations of sexual assault" is conclusory.  (*See* Doc. 37, at 8–9.)  As noted *infra*, Plaintiff is correct that this allegation alone—without additional details, corroboration, or additional allegations—is too vague for purposes of Plaintiff's negligent hiring claim.  However, that does not render Plaintiff's allegation at Paragraph 41 conclusory.  Conclusory allegations include those that constitute "formulaic recitation of the elements" of a legal claim.  *Iqbal*, 556 U.S. at 681.  Throughout her Amended Complaint, Plaintiff does make a slew of conclusory allegations and/or legal conclusions that I cannot and do not simply accept as true, such her claims that "Rockefeller . . . knew or should have known of Oliveira's history of domestic abuse and accusations of sexual assault," (Am. Compl. ¶ 42), "Rockefeller knew or should have known of Oliveira's propensity to commit child sex abuse," (*id.* ¶ 68), or that "the child sexual abuse of Plaintiff by Oliveira was foreseeable to Rockefeller," (*id.* ¶ 83).  Here, however, Plaintiff makes a specific factual allegation regarding Oliveira's personal behavioral history that is in no way conclusory, even if it is not, at this time, corroborated.

foreseeable criminal acts.  Also, as discussed *infra*, establishing a negligent hiring claim requires Plaintiff to prove both the standard elements of negligence as well as the additional negligent hiring requirements, suggesting that failure to conduct due diligence could reasonably a breach of duty as to the negligence analysis without also satisfying the negligent hiring standard.  While it is a close call with regard to this first category of factual allegations that occurred before the first alleged sexual assault, I find that Rockefeller's failure to do any material background check on Oliveira, combined with his decision to "undert[ake] to provide child care" for Plaintiff by assigning her to Oliveira's care, constitutes a plausible allegation of breach of duty.  Regardless, I find that Plaintiff's Amended Complaint clearly alleges that Rockefeller breached a duty with regard to his actions after the first alleged sexual assault.

Second, Plaintiff alleges that Rockefeller failed to investigate after witnessing Plaintiff's condition the morning after Oliveira's first sexual assault.  Plaintiff alleges that, when she, her brother, and Oliveira arrived at Bedford Road the next morning, Plaintiff was "physically ill, in distress and exhausted with dark circles under her eyes," a condition that was "visible to Rockefeller" and other individuals at Bedford Road.  (Am. Compl. ¶ 64.)  In the car beforehand, Plaintiff had vomited.  (*Id.* ¶ 63.)  Plaintiff alleges that, despite her distressed physical condition—and despite the fact that Oliveira had driven her away from Bedford Road and from her mother for an entire night—"Rockefeller . . . did nothing to investigate the cause of the distressed and exhausted condition of . . . Plaintiff when Oliveira returned her to Bedford Road." (*Id.* ¶ 65.)  Even if Rockefeller was not negligent in failing to vet Oliveira prior to hiring him, I find that the combination of Oliveira spending a night with Plaintiff away from Bedford Road, and Rockefeller witnessing Plaintiff's "distressed and exhausted condition" upon their return, was enough to put him on notice to take actions to investigate and potentially protect Plaintiff,

his tenant.  His failure to investigate or take any action, if true, could constitute breach of duty.

Third, Plaintiff alleges that after Oliveira's first sexual assault, Rockefeller failed to secure Plaintiff's living quarters and other areas where Plaintiff would be alone and unsupervised at Bedford Road.  (*Id.* ¶¶ 69–74.)  Plaintiff alleges that even though "Oliveira had no employment related duties in the upstairs living room at Bedford Road or other locations where he sought out . . . Plaintiff," Rockefeller both "failed to instruct Oliveira to not enter . . . Plaintiff's living quarters" or otherwise prevent Oliveira from having access to Plaintiff in these areas.  (*Id.* ¶¶ 71–72, 74.)  Rockefeller's failure to control Oliveira and secure his property to protect Plaintiff, as alleged, also likely amounts to breach of duty.

As such, Plaintiff has plausibly alleged that Rockefeller had a duty to Plaintiff and breached that duty.  Given that Plaintiff obviously suffered injury caused by this breach, I find that Plaintiff has plausibly pled her negligence claim against Rockefeller.  Because Plaintiff does not allege that Dulany was a landowner or landlord at the time, Plaintiff's negligence claim fails as to Dulany because she did not have a duty to Plaintiff.

### 2. Reckless Conduct and Willful Misconduct

Plaintiff also brings claims for recklessness/gross negligence and willful misconduct.  "Gross negligence is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (internal quotation marks omitted).  "Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 61 (2d Cir. 2012) (internal quotation marks omitted).  While I do not believe that Plaintiff has pled anything resembling

"intentional wrongdoing," I cannot dismiss Plaintiff's recklessness claims as they pertain to Rockefeller in light of the second category of factual allegations, listed *supra*, related to his failure to investigate after Oliveira's first sexual assault.[7]

### E.    *Negligent Hiring and Negligent Retention, Supervision or Direction*

I will address these claims together because they have similar elements.  Under both negligent hiring and negligent retention or supervision claims under New York law, Plaintiff must establish, "in addition to the standard elements of negligence,"  "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Alsaud*, 12 F. Supp. 3d at 680 (internal quotation marks omitted).  As noted *supra*, I find that Plaintiff has plausibly alleged negligence as to Rockefeller.  Further, Plaintiff adequately alleges—and Defendants do not contest—that the first and third requirements for negligent hiring and retention or supervision are met.  Plaintiff alleges that Rockefeller employed Oliveira as his chauffeur and retained him during the entirety of the period at issue, satisfying the first requirement.  (*See* Am. Compl. ¶¶ 18, 28.)  Plaintiff further alleges that Oliveira committed the sexual assaults at the Manhattan Apartment and Bedford Road—two of Rockefeller's properties—thus satisfying the third requirement.  (*See id.* ¶¶ 58, 60, 67.)

The contested issue is whether or not Plaintiff has established the second requirement— that the employer knew or should have known of the employee's propensity for the conduct

---

[7] It is unclear from the Amended Complaint and Plaintiff's opposition whether or not she pleads "gross negligence/recklessness" and "willful misconduct" as two separate claims, or the same claim.  (*See* Doc. 38, at 17–18 (referring to the "gross negligence/willful conduct claim.").)  To the extent Plaintiff intends these to be two separate claims, I dismiss the willful conduct claim because Plaintiff has not adequately pled intentional wrongdoing.

which caused the injury prior to the injury's occurrence.  In the context of sexual assault

allegations, in order to survive a motion to dismiss, a plaintiff must in its complaint provide

"factual allegations concerning [the tortfeasor's] propensity for sexual assault," as well as factual

allegations "suggesting that [the defendant] knew or should have known of any such prior acts"

by the tortfeasor.  *Alsaud*, 12 F. Supp. 3d at 680; *see also Capak v. St. Execs Mgmt.*, No. 20-CV-

11079 (RA), 2021 WL 2666007, at *4 (S.D.N.Y. June 29, 2021) (dismissing negligent hiring and

retention claim because "complaint is devoid of any facts tending to show that, at the time [the

tortfeasor] was hired, he had a propensity for violence that was known to [defendants]."); *Ross v.*

*Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 532 (S.D.N.Y. 1998) (finding that "plaintiff must plead

facts," and not "[c]onclusory allegations," "that show that the employer knew of the employee's

propensity for the type of behavior that caused plaintiff's harm.").

     Plaintiff's negligent hiring claim fails because there are no specific factual allegations in

the Amended Complaint that either (1) suggest that Oliveira had a propensity for sexual assault

before Rockefeller hired him, or (2) that Rockefeller knew or should have known that Oliveira

had such a propensity.  Plaintiff alleges that Oliveira "had a history of domestic abuse and

accusations of sexual assault," (Am. Compl. ¶ 41), but provides no more details to corroborate

these barebones allegations.  These factual allegations alone, without any further specifics, are

not nearly enough to establish propensity.  Further, "[t]he [alleged] prior misconduct . . . must be

of the same kind that caused the injury; general, unrelated[,] or lesser allegations of prior

wrongdoing are insufficient." *Alsaud*, 12 F. Supp. 3d at 681.  Plaintiff's allegation about

Oliveira's past history is thus also insufficient because:  (i) there is no indication from the

Amended Complaint that the domestic abuse or sexual assault at issue was against children or

otherwise "of the same kind;" (ii) Plaintiff cites only "accusations" of sexual assault, which is

vague; and (iii) there is no indication that Oliveira's past history was as serious as the sexual assaults alleged here.  I find also that Rockefeller had no reason to know about Oliveira's propensity before hiring him.  For purposes of a negligent hiring claim, Rockefeller "was under no duty to conduct a background check."  *Id.*; *see also Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255, 262 (S.D.N.Y. 2010) ("Under New York law, there is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee.").  Plaintiff's Amended Complaint contains no non-conclusory allegations to indicate that, or how, Rockefeller would have known about Oliveira's propensity to commit sexual assault prior to hiring him.  I must dismiss Plaintiff's negligent hiring claim because Plaintiff has failed to satisfy the second element.

That said, in light of my ruling *supra* on Plaintiff's negligence claim, I find that Plaintiff's negligent retention or supervision claim should survive a motion to dismiss.  "A cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee."  *Biggs v. City of New York*, No. 08 Civ. 8123(PGG), 2010 WL 4628360, at *9 (S.D.N.Y. Nov. 16, 2010) (ellipsis omitted); *see also Bouchard*, 719 F. Supp. 2d at 261 (similar).  Although Plaintiff failed to allege that Rockefeller knew any facts prior to hiring Oliveira that would have required him to investigate— thus dooming Plaintiff's negligent hiring claim—I find that Plaintiff did allege that Rockefeller knew sufficient facts to investigate Oliveira after the first sexual assault.  Specifically, I believe that the factual allegations discussed *supra*—that Rockefeller witnessed Plaintiff in an exhausted and physically distressed condition immediately after she returned from an overnight trip with

Oliveira away from her home and her mother, (*see* Am. Compl. ¶¶ 63–65, 124)—are sufficient to put a reasonably prudent employer on notice that he should investigate his employee for improper conduct.  In making this finding, I am not relying on Plaintiff's allegation as to Oliveira's previous history of domestic violence and/or sexual assault, (*see id.* ¶ 41), but rather on the first time he sexually assaulted Plaintiff in Rockefeller's Manhattan Apartment, (*see id.* ¶¶ 59–60), the visible impact it had on Plaintiff, and Rockefeller's observations of Plaintiff's condition, (*see* Am. Compl. ¶¶ 63–65, 124).

Defendants claims that these allegations are insufficient to sustain a negligent retention or supervision claim because Plaintiff's allegation that her condition was "visible to Rockefeller," (*id.* ¶ 64), does not amount to an "alleg[ation] the Defendants saw Plaintiff in her allegedly distressed state," (Doc. 39, at 6).  While I suppose an extremely technical reading of "visible to Rockefeller" could mean that Plaintiff's condition was so physically apparent that Rockefeller could have, but did not, see it, the far more natural reading is that Plaintiff alleges that Rockefeller himself personally saw Plaintiff upon her return from the Manhattan Apartment.  Indeed, a reasonable inference from the allegations is that Plaintiff's condition was so severe and apparent that no one would have missed it.  I find that these allegations alone are sufficient for Plaintiff's negligent retention or supervision claim against Rockefeller to survive a motion to dismiss.  As noted *supra*, because Dulany had no duty to Plaintiff, this claim fails as to her.

### F.   *Motion to Strike*

I next turn to Defendant's motion to strike Plaintiff's demand for punitive damages pursuant to Rule 12(f).  (Doc. 37, at 23.)  "For any injury, an action may be brought or continued against the personal representative of the decedent, but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury."  N.Y.

E.P.T.L § 11-3.2(a)(1).  As many recent cases in this District have found, "this provision clearly prohibits the award of punitive damages . . . against a deceased tortfeasor's estate."  *Doe v. Indyke*, 468 F. Supp. 3d 625, 630 (S.D.N.Y. 2020) (collecting cases).  Plaintiff appears to concede this, but argues that she "may be entitled to punitive damages from [Dulany]."  (Doc. 38, at 25.)  Because I am dismissing all claims against Dulany, the only claims that remain are those against the Rockefeller estate and the executors of that estate in their capacity as representatives of the estate.  Therefore, state law precludes Plaintiff from seeking punitive damages here.

## V.    <u>Conclusion</u>

Defendants' motion to dismiss, (Doc. 36), is GRANTED IN PART and DENIED IN PART.

Defendants' motion to dismiss is GRANTED as to all claims against Dulany.  Defendants' motion is GRANTED as to all Defendants for Plaintiff's claims for negligent hiring, NIED, premises liability, breach of fiduciary duty, respondeat superior, breach of duty *in loco parentis*, and, to the extent it is a standalone claim, willful misconduct.

Defendants' motion to dismiss is DENIED as to the Estate and Rockefeller Jr., Salomon, and Sligar—in their capacities as executors of Rockefeller's estate—for Plaintiff's claims for negligence, gross negligence, and negligent retention and supervision.

Defendants' motion to strike Plaintiff's demand for punitive damages is GRANTED.

Defendants' motion for oral argument related this motion, (Doc. 40), is DENIED as moot.

The remaining Defendants are directed to submit an answer to Plaintiff's Amended Complaint within twenty-one (21) days of the date that this Opinion & Order is filed.

The Clerk's office is directed to terminate the open motion at Document 36 and dismiss

Dulany from the case.

SO ORDERED.

Dated: October 21, 2021
       New York, New York

Vernon S. Broderick
United States District Judge